PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1029
_____

UNITED STATES OF AMERICA

v.

RONALD PEPPERS
                          Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-00-cr-00105-001)
District Judge:  Hon. Sylvia H. Rambo
_____

Argued
October 12, 2017

Before:  CHAGARES, JORDAN, and FUENTES, *Circuit Judges.*

(Filed: August 13, 2018)
_____

Heidi Freese
Frederick W. Ulrich   [ARGUED]
Tammy L. Taylor
Office of Federal Public Defender
100 Chestnut Street - #306
Harrisburg, PA   17101
        *Counsel for Appellant*

David J. Freed
Carlo D. Marchioli   [ARGUED]
Kate L. Mershimer
Office of United States Attorney
228 Walnut Street - #220
P.O. Box 11754
Harrisburg, PA   17108
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Ronnie Peppers was sentenced in 2003 to fifteen years of imprisonment for being a felon in possession of a firearm. That was the mandatory minimum under the Armed Career Criminal Act ("the ACCA" or "the Act"), and the District Court imposed it because of Peppers's previous convictions. Peppers now challenges that sentence as unconstitutional in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated a clause of the ACCA – the "residual clause" – as unconstitutionally vague. He argued in District Court in a motion under 28

2

U.S.C. § 2255 that he was impermissibly sentenced under that invalid clause. But that § 2255 motion was not his first, and § 2255 itself, through subsection (h), places limits on any effort to file a second or successive collateral attack on a criminal judgment. The District Court denied Peppers's second § 2255 motion after determining that his prior convictions remained predicate offenses for ACCA purposes because they are covered by portions of the Act that survived *Johnson*. Because we disagree with the District Court's conclusions, we will vacate its decision and remand the case for further proceedings.

Five holdings lead to our remand. First, the jurisdictional gatekeeping inquiry for second or successive § 2255 motions based on *Johnson* requires only that a defendant prove he might have been sentenced under the now-unconstitutional residual clause of the ACCA, not that he was in fact sentenced under that clause. Second, a guilty plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) does not preclude a defendant from collaterally attacking his sentence in a § 2255 motion, if his sentence would be unlawful once he proved that the ACCA no longer applies to him in light of *Johnson*. Third, a defendant seeking a sentence correction in a second or successive § 2255 motion based on *Johnson*, and who has used *Johnson* to satisfy the gatekeeping requirements of § 2255(h), may rely on post-sentencing cases (*i.e.*, the current state of the law) to support his *Johnson* claim. Fourth, Peppers's robbery convictions, both under Pennsylvania's robbery statute, are not categorically violent felonies under the ACCA, and, consequently, it was error to treat them as such. Fifth and finally, Peppers failed to meet his burden of proving his *Johnson* claim with respect to his Pennsylvania burglary

3

conviction. We will therefore vacate the District Court's order and remand for an analysis of whether the error that affected Peppers's sentence, i.e., the error of treating the robbery convictions as predicate offenses under the ACCA, was harmless in light of his other prior convictions.

## I. FACTS AND PROCEDURAL HISTORY

### A. *The Initial Trial and Subsequent Guilty Plea*

This case has a long history. In 2000, Peppers was indicted for numerous federal firearms and drug offenses. Among those charges was murder with a firearm, in violation of 18 U.S.C. § 924(j). Peppers pled not guilty to all of the charges, but a jury saw things differently. It convicted him on every count, including the murder charge. He was sentenced to life imprisonment plus five years.

Peppers filed a direct appeal, challenging, among other things, the District Court's denial of his request to proceed *pro se*. *United States v. Peppers*, 302 F.3d 120, 123 (3d Cir. 2002). We concluded that the District Court erred in handling Peppers's request to represent himself, and thus we vacated the judgment and commitment order and remanded the case for a new trial.

On remand, Peppers was adamant that he did not want to go through another trial. Instead, he chose to plead guilty under Federal Rule of Criminal Procedure 11(c)(1)(C) (the "(C) plea"). As part of his plea agreement with the government, he waived indictment and pled to a one-count information charging him as an armed career criminal in possession of a .22 caliber revolver, in violation of 18 U.S.C.

4

§§ 922(g)(1) and 924(e)(1).  The charging document stated that Peppers had previously been convicted of a variety of state and federal felonies in six separate proceedings: first, in 1979, when he was a juvenile, for both armed robbery and robbery; second, in 1984 for burglary; third, in 1984 for possession of instruments of a crime; fourth, in 1985 for escape; fifth, in 1985 for armed robbery and criminal conspiracy; and sixth, in 1993 for criminal conspiracy to commit unauthorized use of an access device.  Because of his admitted status as an armed career criminal, the mandatory minimum penalty for the crime to which Peppers pled guilty was fifteen years' imprisonment.  The (C) plea was conditioned upon the District Court sentencing him to that minimum penalty.

The plea agreement also stated that the parties understood the United States Sentencing Guidelines applied to the offense to which Peppers was pleading guilty. Although the agreement made plain that Peppers was being convicted and sentenced as an armed career criminal under the ACCA, it failed to disclose which of the six convictions stated in the information qualified as the three predicate "violent felonies" that made him eligible for enhanced penalties under the ACCA.  That Act provides, in relevant part, that "a person who violates section 922(g) … and has three previous convictions … for a violent felony … committed on occasions different from one another, … shall be fined … and imprisoned not less than fifteen years[.]"  18 U.S.C. § 924(e)(1).  The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year … that [A] has as an element the use, attempted use, or threatened use of physical force against the person of another; or [B] is burglary, arson, or extortion, involves use of

5

explosives, or [C] otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" *Id.* § 924(e)(2)(B). The parts labeled here as [A], [B], and [C] are commonly referred to, respectively, as the force or elements clause, the enumerated offenses clause, and the residual clause.

At the plea colloquy, the District Court and the parties discussed only in broad terms whether the prior convictions fell within the ACCA, as the following exchange shows:

> [Peppers's Counsel]: We also agree to the applicability of the sentence enhancement under the Armed Career Criminal Act, in that the government has shown the existence of three prior convictions which meet the definitions under the Armed Career Criminal Act. So we have agreed to that, and I have explained that to Mr. Peppers. Is that correct?
>
> … [Peppers and his attorney confer off the record.] …
>
> The Court: At least, number one, the armed robbery and robbery and probably the burglary and the other armed robbery and criminal conspiracy would probably meet the Armed Career Criminal.
>
> [Peppers's Counsel]: The armed robbery and robbery would definitely meet the requirements of the Armed Career Criminal Act. The burglary as stated at number two

6

would meet the requirements of the Armed Career Criminal Act. Possession of instruments of a crime may or may not. Escape may or may not. But armed robbery definitely would.

> The Court: We have got at least three there.

> [Peppers's Counsel]: Correct.

(App. at 55-56.) There was no discussion concerning which of the specific ACCA clauses were thought to make three of Peppers's prior convictions "violent felonies." On August 13, 2003, the District Court accepted the (C) plea and sentenced Peppers to fifteen years in prison.

As allowed by his plea agreement,[1] Peppers filed a direct appeal challenging the constitutionality of the felon-in-possession statute he was convicted of violating, and we affirmed his conviction. *United States v. Peppers*, 95 F. App'x 406 (3d Cir. 2004). The Supreme Court later denied his petition for a writ of certiorari. *Peppers v. United States*, 543 U.S. 894 (2004).

### B. Peppers's First § 2255 Motion

On November 3, 2005, Peppers filed his first motion under § 2255, collaterally attacking both his conviction and sentence. He advanced nine claims, all of which were rejected by the District Court, and Peppers appealed. We

---

[1] There was no waiver of appellate or collateral attack rights, as is often found in plea agreements.

7

granted a certificate of appealability solely as to whether Peppers's plea counsel was ineffective for allegedly misinforming him about the ACCA's application and for failing to challenge its applicability on appeal. We ultimately determined that Peppers did not receive ineffective assistance of counsel for either reason. It was not ineffective to concede that Peppers was eligible for enhanced punishment under the ACCA and to negotiate for him to receive a sentence of fifteen years in prison, rather than having him face the potential of a life sentence, which he would have risked if all the original charges had been reinstated. Thus, we affirmed the denial of Peppers's § 2255 motion. *United States v. Peppers*, 273 F. App'x 155, 156 (3d Cir. 2008).

### C.     *Peppers's Second § 2255 Motion*

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court invalidated the residual clause of the ACCA as being unconstitutionally vague. Then, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court made that ruling retroactive, so that it applies to cases on collateral review. Peppers filed a timely second § 2255 motion seeking resentencing based on *Johnson*. He also submitted the required application for permission to file a second such motion, under 28 U.S.C. §§ 2255(h) and 2244(b)(3). We allowed him to proceed with his second § 2255 motion, concluding that he had satisfied the gatekeeping requirements of § 2255(h) – which are jurisdictional – by making "a prima facie showing that his proposed § 2255 motion contains a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." (App. at 136.)

Peppers claimed that his armed robbery convictions under Pennsylvania law no longer qualify as violent felonies after *Johnson* invalidated the ACCA's residual clause. He also claimed that his burglary conviction under Pennsylvania law no longer qualifies as a violent felony under the ACCA. Both of those claims required the District Court to resentence him, he said, because the fifteen-year minimum imprisonment sentence dictated by the ACCA no longer applied to him and the maximum sentence for the felon-in-possession offense he pled to is only ten years' imprisonment.

The government moved to dismiss the second § 2255 motion for three reasons. First, it argued that the District Court lacked jurisdiction to consider a second § 2255 motion from Peppers "because he has not shown that the new rule of constitutional law announced in *Johnson* applies in his case." (App. at 173, 175-76.) Essentially, the government contended that, because the District Court never said at sentencing that Peppers's prior convictions fell under the ACCA's residual clause and Peppers submitted no evidence showing that those convictions did not fall under another ACCA clause, he failed to meet the jurisdictional gatekeeping requirements of § 2255(h). Second, the government contended that, looking to the case law that existed when Peppers was sentenced, Peppers's Pennsylvania armed robbery convictions qualify as violent felonies under the ACCA's elements clause. Finally, the government argued that Peppers's Pennsylvania burglary conviction was a violent felony under the ACCA's enumerated offenses clause, particularly in light of "the unobjected-to-facts in the PSR[.]" (App. at 181.)

9

The District Court directed the government to file a supplemental brief addressing the impact of Peppers's (C) plea on his claim for resentencing based on *Johnson*. The government did so and argued that the plea agreement precluded Peppers from challenging his sentence because the sentence was based on the agreement and the strictures of Federal Rule of Criminal Procedure 11(c)(1)(C), not on the ACCA's invalid residual clause. Peppers countered that the plea agreement should not affect his ability to seek relief under § 2255 in light of *Johnson* because that agreement was grounded in legal error about the residual clause.

The District Court ultimately denied the second § 2255 motion on the merits because it found that Peppers's predicate offenses were violent felonies under the ACCA, even in the absence of the residual clause. It noted the threshold jurisdictional issue raised by the government but did not provide any independent analysis or discussion of it. Instead, in a footnote, the Court adopted "the reasons set forth in Peppers'[s] response" to explain why he satisfied the jurisdictional requirements of § 2255(h). (App. at 4 n.1.) On the merits, the Court concluded that the residual clause had no effect on this case because Peppers had three predicate offenses that qualified as violent felonies under the ACCA's other clauses. Specifically, it determined that Peppers's two previous armed robbery convictions in 1979 and 1985, respectively, qualified under the elements clause, and that Peppers's burglary conviction qualified under the enumerated offenses clause. The Court reached the latter conclusion despite recognizing that the Pennsylvania burglary statute is broader than generic burglary, reasoning that the evidence showed his conviction met the elements of the generic

10

offense.  Therefore, the District Court held that Peppers was ineligible for relief under § 2255.

We granted Peppers a certificate of appealability on the question of whether he was improperly sentenced in light of *Johnson*.[2]  He timely appealed.

---

[2] Specifically, we said the following:

Peppers's application for a certification of appealability is granted as to his claim that, in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), he was not properly sentenced under the Armed Career Criminal Act because he does not have three or more previous convictions for a "violent felony."  As to this claim, we are satisfied that Peppers has made a substantial showing of the denial of a constitutional right.  In addition to any other issues that the parties wish to raise in their briefs, they are directed to address (a) whether Peppers may raise his *Johnson* challenge notwithstanding the fact that he pleaded guilty; (b) whether the record reveals if the District Court relied on the residual clause at the time of sentencing, and if it does not, whether this affects Peppers's ability to raise a *Johnson* claim in a second or successive § 2255 motion; and (c) whether Peppers may rely on decisions that post-date his sentencing (such as *Mathis v. United States*, 136 S. Ct. 2243 (2016), *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Johnson v. United States*, 559 U.S.

## II. DISCUSSION

### A.    *Standard of Review and Jurisdiction*

This appeal raises purely legal issues, which we review *de novo*. *United States v. Doe*, 810 F.3d 132, 142 (3d Cir. 2015).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a defendant in federal custody may file a motion collaterally attacking his sentence based on certain specifically listed grounds, namely that the sentence was imposed in violation of the Constitution or federal law, that the court was without jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).  And a defendant is allowed only one such motion as of right.  *Id.* § 2255(b), (h).  A second or successive motion must be certified by a court of appeals to rely upon either "newly discovered evidence" showing innocence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  *Id.* § 2255(h). Those are the gatekeeping requirements of § 2255(h) that

> 133 (2010)) to show that his prior convictions do not qualify as violent felonies or whether he may rely on *Johnson v. United States*, 135 S. Ct. 2551 (2015), and the law as it otherwise existed at the time of his sentencing.

(App. at 9-10 (citations omitted).)

limit collateral review. *See In re Dorsainvil*, 119 F.3d 245, 247-48 (3d Cir. 1997) (analyzing "the two prongs of § 2255's gatekeeping provision"). The required certification is made pursuant to § 2244, which directs that a panel of "[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application … satisfies the [gatekeeping] requirements[.]" *Id.* § 2244(b)(3)(C) (made applicable by 28 U.S.C. § 2255(h)). But, even after we authorize a second or successive petition, § 2244 still requires the district court to "dismiss any claim presented in a second or successive application … unless the applicant shows that the claim satisfies the [gatekeeping] requirements[.]" *Id.* § 2244(b)(4). Thus, both we and the district court are responsible to conduct independent analyses of whether the gatekeeping requirements have been satisfied in any particular case. Only after a defendant's second or successive motion has made it past the gatekeeping requirements of § 2255(h) may the district court consider the merits of the claims. *See In re Hoffner*, 870 F.3d 301, 308 (3d Cir. 2017) ("[W]e do not address the merits at all in our gatekeeping function.").

Our jurisdiction to review the District Court's rulings is uncontested and is rooted in 28 U.S.C. § 2253(a), which provides that the final order from a proceeding under § 2255 before a district judge "shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding [was] held." The District Court's jurisdiction is contested. The government argued below, and argues again on appeal, that the District Court lacked jurisdiction over Peppers's second § 2255 motion because he did not satisfy the gatekeeping requirements of 28 U.S.C. §§ 2244(b)(4) and 2255(h), given that no new rule of constitutional law applies

13

to him.  Even in the absence of the government's challenge, we would be obligated to assess whether the District Court had jurisdiction to consider the motion.[3]  *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 177 (3d Cir. 2017) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("An appellate federal court must satisfy itself … of [the] … jurisdiction … of the lower courts in a cause under review.")).

The government's jurisdictional argument, however, falls short.  In our view, § 2255(h) only requires a petitioner to show that his sentence may be unconstitutional in light of a

[3] The gatekeeping requirements of § 2255(h), which appear in § 2244(b)(4) and are incorporated into § 2255(h), are jurisdictional.  *See In re Pendleton*, 732 F.3d 280, 283 (3d Cir. 2013) ("[T]he District Court must dismiss [a] habeas corpus petition for lack of jurisdiction if it finds that the requirements for filing such petition have not in fact been met."); *see also Hoffner*, 870 F.3d at 308 ("[W]e do not address the merits at all in our gatekeeping function."); *Goldblum v. Klem*, 510 F.3d 204, 219 n.9 (3d Cir. 2007) ("The merits of the claims in a second petition may not be considered by the district court until the application clears the 'two gates' erected under section 2244, that of the court of appeals and that of the district court.").  The Department of Justice has recently changed its position and no longer views the gatekeeping inquiry as jurisdictional, *see* letter of Jan. 26, 2018, from government counsel ("Although the Government continues to maintain that Peppers … failed to meet the gatekeeping requirements and [was] properly denied relief, the Department of Justice no longer views the gatekeeping inquiry as jurisdictional."), but that change does not comport with our established precedent.

14

new rule of constitutional law made retroactive by the Supreme Court. Peppers met that standard by demonstrating that he may have been sentenced under the residual clause of the ACCA, which was rendered unconstitutional in *Johnson*.

Although, as already noted, both we and the District Court must determine whether the gatekeeping requirements of § 2255(h) have been met, there is a difference. Our inquiry does not go as deep because we are in search of a mere "'prima facie showing' … that the petitioner has satisfied the pre-filing requirements 'to warrant full exploration by the district court.'" *Hoffner*, 870 F.3d at 308 (quoting *Goldblum*, 510 F.3d at 219 & n.9). The District Court's analysis of the gatekeeping requirements, by contrast, must be "more extensive," more "thorough," and "a fuller exploration." *Goldblum*, 510 F.3d at 220 (citation omitted). The District Court is not bound by our preliminary examination of the gatekeeping requirements, nor should it rest on our determination; it must conduct an independent inquiry. *Id.* at 219-20.

The specific AEDPA provision that Peppers says should permit consideration of his second § 2255 motion is the one allowing a successive collateral attack when a "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable[.]" 28 U.S.C. §§ 2244(b)(2)(A), (b)(4). The government contends that that provision requires a defendant to do more than merely invoke *Johnson* and assert that he was possibly sentenced under the residual clause. Rather, the government argues, he must demonstrate that the sentencing court did in fact employ the residual clause in imposing an enhanced sentence under the ACCA.

15

That view suggests a defendant can only pass through the jurisdictional gate by producing evidence that his sentence depended "solely" upon the ACCA's residual clause. (Answering Br. at 21.) Peppers counters that AEDPA's gatekeeping requirements are satisfied by showing that the sentencing judge may have used the residual clause. (Reply Br. at 4.) Peppers has the better position.

The statutory text, case law from our sister circuits, and policy considerations indicate that § 2255(h) only requires a movant to show that his sentence may be, not that it must be, unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court. It is true that Congress passed AEDPA with the purpose of restricting a defendant's ability to collaterally attack his conviction or sentence, especially with a second or successive attack. *See Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004) (recognizing Congress's goal of limiting opportunities for filing second or successive habeas petitions). But, strict though Congress intended it to be, AEDPA surely was not meant to conflate jurisdictional inquiries with analyses of the merits of a defendant's claims.

"We begin, as usual, with the statutory text," *Maslenjak v. United States*, 137 S. Ct. 1918, 1924 (2017), and although the text here is inconclusive, it supports adopting a flexible approach to satisfying the gatekeeping requirements. As a reminder, the burden on someone launching a second or successive collateral attack like Peppers's on a conviction or sentence is to show that the attack "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court[.]" *Id.* § 2244(b)(2)(A). In *In re Hoffner*, we recently held that "whether a claim 'relies' on

16

a qualifying new rule must be construed permissively and flexibly on a case-by-case basis."[4]   870 F.3d at 308.   We recognized that "a motion 'relies' on a qualifying new rule where the rule 'substantiates the movant's claim.'"   *Id.* (citation omitted).   And that "is so even if the rule does not 'conclusively decide []' the claim or if the petitioner needs a 'non-frivolous extension of a qualifying rule.'"   *Id.* (alteration in original) (citation omitted).

While the statutory text arguably could support the government's contention that a movant only "relies" on a new rule of constitutional law if he can prove his sentence in fact

---

[4] In *Hoffner*, we considered "what is required for a claim to 'rel[y]' on a qualifying new rule for the purposes of Section 2255(h)(2)."   870 F.3d at 308 (alteration in original). We made that interpretation based on what a petitioner must show to demonstrate a prima facie case that the prerequisites for a motion under § 2255(h) are met. *Id.* Section 2255(h)(2) does not include the word "relies" at all.   Rather, that language was taken from the Supreme Court's decision in *Tyler v. Cain*, 533 U.S. 656 (2001), where the Court laid out the three requirements for bringing a claim based on § 2244(b)(2)(A).   *See Hoffner*, 870 F.3d at 308 ("Even the Government concedes that Section 2255(h)(2) has 'no express requirement that the 'new rule' must actually pertain to the petitioner's claim.'" (citation omitted)).   But that language does appear in § 2244(b)(2)(A), and there is no principled reason for treating the term differently between the two provisions of AEDPA when both provisions are nearly identically worded and serve the same gatekeeping function, § 2255(h)(2) for the court of appeals and § 2244(b)(2)(A) for the district court.

is unconstitutional under that new rule, Peppers's interpretation is more consistent with *Hoffner* and a common sense analytical approach. Because the word "relies" should be interpreted "flexibly" on a "case-by-case basis," the implication is that a movant satisfies the gatekeeping requirements under § 2244(b)(2)(A) and 2255(h)(2) when he demonstrates that his sentence *may* be unconstitutional in light of the new rule of constitutional law. *Cf. Griffin v. United States*, 502 U.S. 46, 53 (1991) ("[W]here a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground."). To interpret the language as the government suggests would effectively turn the gatekeeping analysis into a merits determination, which defeats the purpose of the jurisdictional review. *See Hoffner*, 870 F.3d at 308 ("[W]e do not address the merits at all in our gatekeeping function."). We thus conclude that a movant like Peppers satisfies the jurisdictional requirements for a § 2255(h)(2) motion by showing the new rule of constitutional law he advances may require resentencing.

That conclusion finds support in decisions from other circuit courts. In *United States v. Winston*, the Fourth Circuit held "that when an inmate's sentence may have been predicated on application of the now-void residual clause and therefore, may be an unlawful sentence under the holding in [*Johnson*], the inmate has shown that he 'relies on' a new rule of constitutional law within the meaning of 28 U.S.C. § 2244(b)(2)(A)." 850 F.3d 677, 682 (4th Cir. 2017). The Ninth Circuit recently reached a similar conclusion in *United States v. Geozos*, 870 F.3d 890 (9th Cir. 2017), in which the court said that, "when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant

18

qualified as an armed career criminal, but it may have, the defendant's § 2255 claim 'relies on' the constitutional rule announced in [*Johnson*]." *Id.* at 896.[5]

[5] The government would have us rely on *In re Moore*, 830 F.3d 1268 (11th Cir. 2016). But that case is inapposite when one is considering the burden at the gatekeeping stage, rather than the merits stage, of the analysis. In *Moore*, the United States Court of Appeals for the Eleventh Circuit said in dicta that a movant cannot meet his burden in a § 2255 proceeding "unless he proves that he was sentenced using the residual clause and that the use of that clause made a difference in the sentence." *Id.* at 1273. So "[i]f the district court cannot determine whether the residual clause was used in sentencing and affected the final sentence—if the court cannot tell one way or the other—the district court must deny the § 2255 motion." *Id.* But that standard describes the burden on the movant to show "that he is entitled to relief in a § 2255 motion—not just a *prima facie* showing that he meets the requirements of § 2255(h)(2), but a showing of actual entitlement to relief on his *Johnson* claim." *Id.* at 1272. In other words, the dicta referenced requirements for a merits ruling.

The Eleventh Circuit applies a different standard at the gatekeeping stage. It uses a "clear/unclear test" to make "a preliminary determination about whether a habeas petitioner [has] made out a prima facie showing sufficient to warrant leave to file a second or successive section 2255 motion." *Beeman v. United States*, 871 F.3d 1215, 1224 n.6 (11th Cir. 2017). That allows a movant's § 2255 motion to be denied at the gatekeeping stage only if it is clear that he was sentenced under the elements clause or the enumerated offenses clause, or if it is clear that prior convictions qualifying under the

Policy considerations also favor the same interpretation. As stated in *Winston*, "[n]othing in the law requires a [court] to specify which clause … it relied upon in imposing a sentence." 850 F.3d at 682 (alterations in original) (citation omitted). A defendant's *Johnson* claim should not be unfairly tethered to the discretionary decision of his sentencing judge to specify the ACCA clause under which each prior conviction qualifies as a violent felony. *Id.* The government's rule results in randomly unequal treatment of § 2255 claims.

Finally, contrary to the government's characterization, the rule that Peppers advocates does not deprive the gatekeeping requirements of force. Under the rule we announce today, simply mentioning *Johnson* in a § 2255 motion is not enough. The movant must still show that it is possible he was sentenced under the now-unconstitutional residual clause of the ACCA. There are likely to be situations where the record is clear that a defendant was not sentenced under the residual clause, either because the sentencing judge said another clause applied or because the evidence provides clear proof that the residual clause was not implicated. When that happens, the movant cannot establish that he may have been sentenced under the residual clause, and the court must dismiss the § 2255 motion for lack of jurisdiction.[6] So we are

---

"serious drug offense" provision of the ACCA are taken into account. *In re Rogers*, 825 F.3d 1335, 1338 (11th Cir. 2016).

[6] The government also contends that allowing Peppers to "pass through the jurisdictional door by merely identifying the possibility that he was sentenced based on the residual

20

not undermining AEDPA by holding that a movant satisfies § 2255(h)'s gatekeeping requirements with a showing that he may have been sentenced under the now-unconstitutional residual clause of the ACCA.

Peppers met those requirements by demonstrating that the claims in his second § 2255 motion rely on the new rule of constitutional law announced in *Johnson* and made retroactive on collateral review in *Welch*. The record indicates that Peppers was sentenced to the minimum of fifteen years' imprisonment under the ACCA because the District Court and the parties believed he had at least three prior convictions qualifying as violent felonies under that statute. But the Court did not specify the clauses under which those prior convictions qualified as violent felonies. Once it was satisfied that, as defense counsel acknowledged, there were at least three prior convictions that "would definitely meet the requirements of the Armed Career Criminal Act[,]" it stopped its analysis and concluded that the Act applied. (App. at 56.) Therefore, the evidence demonstrates that Peppers may have been sentenced under the ACCA's residual clause, and that, in turn, is enough to demonstrate that his motion to correct his sentence relies on the new rule of constitutional law announced in *Johnson*. The District Court

---

clause" has the practical effect of shifting the burden of proof from the defendant to the government. (Answering Br. at 17.) We disagree. Peppers, as the movant, retains the burden to prove both that he has met the gatekeeping requirements *and* that his claim under *Johnson* is meritorious. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977) ("[I]n habeas cases the general rule is that the petitioner himself bears the burden of proving that his conviction is illegal.").

21

thus properly determined that it had jurisdiction to reach the merits of Peppers's § 2255(h)(2) motion.

Having concluded the District Court had jurisdiction to hear Peppers's claims, we must decide the effect of Peppers's (C) plea on his ability to raise *Johnson* claims collaterally attacking his sentence.

### B. *Peppers's Rule 11(c)(1)(C) Plea*

Federal Rule of Criminal Procedure 11(c)(1)(C) provides that "[a]n attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement" that includes an agreement "that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply[.]" Generally, "[a] plea of guilty [under that rule] and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). The government argues that, because "Peppers explicitly and voluntarily exposed himself" to a fifteen-year sentence in a (C) plea, "he cannot now seek collateral relief by arguing that his sentence was based on the residual clause." (Answering Br. at 35.) Peppers counters that his (C) plea does not preclude him from collaterally attacking his sentence because his challenge is directed at a sentencing enhancement rather than a conviction and "a guilty plea does not foreclose challenges to the constitutionality of a statute as applied to a

22

particular defendant."[7] (Opening Br. at 13.) We agree with Peppers that his (C) plea does not preclude his § 2255 motion.

As a general rule, only a limited set of grounds are available for a defendant to challenge a conviction or sentence based on a guilty plea. The Supreme Court has stated that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Broce*, 488 U.S. at 569. If the plea was both counseled and voluntary, that will generally "foreclose the collateral attack." *Id.* Nevertheless, "[t]here are exceptions where on the face of the record the court had no power to enter the conviction or

---

[7] Our precedent allows a defendant to directly challenge the constitutionality of the statute of conviction notwithstanding a guilty plea. *See United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002) (stating that a defendant's direct challenge to the constitutionality of the statute of conviction was not barred by her guilty plea). And the Supreme Court recently held that "a guilty plea [does not] bar a criminal defendant from later appealing his conviction on the ground that the statute of conviction violates the Constitution[.]" *Class v. United States*, 138 S. Ct. 798, 801-02 (2018). The Court's holding, however, was cabined to direct appeal. *Id.* at 803, 805, 807. In any event, that holding does not bear on our resolution of whether Peppers's (C) plea precludes his *Johnson* claim because Peppers is not collaterally attacking the constitutionality of the statute underlying his conviction, 18 U.S.C. § 922(g). Instead, his *Johnson* claim is directed at a sentencing enhancement applied under 18 U.S.C. § 924(e).

impose the sentence." *Id.* While "the circumstances under which a guilty plea may be attacked on collateral review" are strictly limited, "it would be inconsistent with the doctrinal underpinnings of habeas review to preclude [a] petitioner from relying on [a new rule of constitutional law] in support of his claim that his guilty plea was unconstitutionally invalid." *United States v. Bousley*, 523 U.S. 614, 621 (1998).

In line with those principles, we conclude that Peppers's guilty plea does not preclude a collateral attack pursuant to *Johnson*. It would be impermissible to preclude a § 2255 motion to correct sentence, which meets the gatekeeping requirements and is not procedurally barred, based on a (C) plea that preserves a now-unlawful sentence. Parties may not stipulate to an unlawful sentence in a plea agreement. *See, e.g.*, *United States v. Symington*, 781 F.3d 1308, 1313 (11th Cir. 2015) (stating that a district court has no authority to impose an unlawful sentence even if stipulated to by the parties in a plea agreement); *United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) ("[A] district court has no discretion to impose a sentence outside of the statutory range established by Congress for the offense of conviction." (emphasis omitted)); *United States v. Moyer*, 282 F.3d 1311, 1318-19 (10th Cir. 2002) (concluding that the district court erred when it sentenced the defendant pursuant to the plea agreement when that sentence contravened the applicable law). If, at the time of sentencing, a plea agreement requires imposition of a sentence that either falls below or exceeds the statutory penalty limits, the district court is without authority to accept that plea. Therefore, when a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court renders illegal a sentence that was imposed based on a Rule

24

11(c)(1)(C) plea agreement, a defendant who otherwise can successfully challenge that sentence in a § 2255 motion cannot be held to the unlawful term of imprisonment.

Here, assuming Peppers makes a meritorious § 2255 claim, it would be unlawful for the District Court to impose upon him the sentence he is now serving based on his (C) plea agreement. If Peppers wins on the merits of his *Johnson* claim because he was sentenced under the residual clause and his prior convictions do not fall within the remaining clauses of the ACCA, then that statute cannot be constitutionally applied to him. In the absence of the ACCA, there is no applicable sentencing enhancement that carries with it a minimum sentence of fifteen years' imprisonment. *See* 18 U.S.C. § 924(e)(1). Instead, the maximum sentence for his underlying conviction is ten years of imprisonment. *See id.* § 924(a)(2). Therefore, the District Court would be without authority to impose a sentence upon Peppers with a term of imprisonment any greater than ten years, even if the government and Peppers stipulated to a greater term. The plea agreement in this case does just that – it stipulates to a term of imprisonment of fifteen years. For those reasons, the (C) plea does not stand as an obstacle to Peppers's collateral attack on his sentence in light of *Johnson*.[8]

---

[8] The government asserts that the Supreme Court's decision in *Freeman v. United States*, 564 U.S. 522 (2011), dictates the outcome we should reach here. In *Freeman*, the Court considered whether a defendant who was sentenced pursuant to a Rule 11(c)(1)(C) plea could challenge that sentence after a subsequent amendment to the applicable Guidelines sentencing range. *Id.* at 525. Although no single opinion garnered a majority of the Justices' support, we have

25

Given that conclusion, we turn to the merits of Peppers's second § 2255 motion. The analysis requires us to determine whether his prior felony convictions qualify under either the elements clause or the enumerated offenses clause of the ACCA. To do so, however, we must first consider whether case law that developed after his sentencing can apply to Peppers's *Johnson* claims.[9]

---

said that Justice Sotomayor's concurring opinion controls. *See id.* at 534 (Sotomayor, J., concurring); *see also United States v. Weatherspoon*, 696 F.3d 416, 422 (3d Cir. 2012) (stating that Justice Sotomayor's opinion concurring in the judgment is the controlling opinion in *Freeman*). Recently, however, the Supreme Court resolved the sentencing issue and held that, contrary to Justice Sotomayor's concurrence in *Freeman*, "a sentence imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018).

We do not need to decide here whether to extend the rule in *Hughes* to collateral attacks on sentences under § 2255 based on *Johnson* because neither *Freeman* nor *Hughes* addressed a situation where a new rule of constitutional law may have rendered the sentence imposed in a (C) plea agreement unlawful. Under those circumstances, the rule in *Hughes* is inapposite.

[9] Specifically, the parties dispute whether, in resolving the merits of a *Johnson* claim, we must apply the law as it existed at the time of sentencing to determine whether the defendant could have been sentenced under the elements or

### C. *Using Post-Sentencing Case Law to Establish the Merits of a* Johnson *Claim*

Ordinarily, new constitutional rules of criminal procedure, though they form the current state of the law, are not applicable to cases that became final before the new rules were announced. *Teague v. Lane*, 489 U.S. 288, 310 (1989). Nevertheless, Peppers argues that we should use "the current state of the law" to determine whether his prior convictions qualify as violent felonies under either the elements clause or the enumerated offenses clause of the ACCA. (Opening Br. at 20.) The government counters that we may only use "available prior conviction records and case law as it existed at the time of sentencing." (Answering Br. at 22.) Under the circumstances here, we agree with Peppers.

Supreme Court cases since Peppers's sentencing have provided important guidance on how to interpret whether a conviction falls within a given clause of the ACCA. Those decisions include *Mathis v. United States*, 136 S. Ct. 2243 (2016), *Descamps v. United States*, 570 U.S. 254 (2013), and

---

enumerated offenses clause or, conversely, whether the defendant is entitled to rely on post-sentencing case law. For reasons discussed herein, *see infra* Subsection II.C. & n.21, we conclude that, once a defendant has satisfied § 2255(h)'s gatekeeping requirements by relying on *Johnson*, he may use post-sentencing cases such as *Mathis*, *Descamps*, and *Johnson 2010* to support his *Johnson* claim.

*Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson 2010*").[10]

In *Mathis*, the Supreme Court stated that, "[t]o determine whether a past conviction [falls within the ACCA's enumerated offenses clause], courts compare the elements of the crime of conviction with the elements of the 'generic' version of the listed offense—*i.e.*, the offense as commonly understood." 136 S. Ct. at 2247. The Court made it clear that there is no exception to that rule, even "when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements." *Id.* at 2248. The rule remains "that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." *Id.* at 2247. That rule, well known as the "categorical approach," requires the sentencing court to look solely at the elements of the crime of conviction and the elements of the generic offense, without consulting any of the specific facts of the case. *Id.*

When the elements of the statute of conviction – as opposed to the means of satisfying the elements – are stated "in the alternative," then the statute is said to be "divisible," and the Supreme Court allows a "modified categorical

---

[10] To the extent the parties also dispute the applicability of *United States v. Steiner*, 847 F.3d 103 (3d Cir. 2017), that is better understood as an attack on the applicability of *Mathis*, which dictated our conclusion there. *See Steiner*, 847 F.3d at 119 (holding that the Pennsylvania burglary statute is not divisible after *Mathis*, and must be analyzed using a categorical rather than modified categorical approach).

28

approach." *Descamps*, 570 U.S. at 257. Under that approach, sentencing courts may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* After that, the sentencing court proceeds as it would under the categorical approach. *Id.* In *Descamps*, the Court considered whether that modified categorical approach should be used "when a defendant was convicted under an 'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense." *Id.* at 258. The Court answered no and held that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Id.* Indicating that the rule it announced in *Descamps* was not new but rather rested upon old precedent, the Court said its "caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case." *Id.* at 260.

Finally, in *Johnson 2010*, the Supreme Court interpreted what the ACCA means when it speaks of a crime involving "physical force." 559 U.S. at 138. The Court concluded that "physical force" under the ACCA's elements clause means "violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis omitted). It said that such "physical force" cannot "be satisfied by the merest touching." *Id.* at 139. The Court then applied that interpretation to hold that Florida's "felony offense of battery by '[a]ctually and intentionally touch[ing]' another person" does not have "as an element the use … of physical force against the person of another," and thus is not categorically a "violent felony" under the ACCA. *Id.* at 135,

29

145 (alterations in original) (citations omitted). Thus, Supreme Court cases like *Mathis*, *Descamps*, and *Johnson 2010* are instructive on how sentencing courts can properly apply the categorical and modified categorical approaches, as well as how they must interpret the ACCA's terms.

Lower federal courts are decidedly split on whether current law, including *Mathis*, *Descamps*, and *Johnson 2010*, may be used when determining which ACCA clauses a defendant's prior convictions may implicate. The Courts of Appeals for the Seventh and Eleventh Circuits, as well as many district courts, have held that only case law existing at the time of a defendant's sentencing may be used to decide the merits of the defendant's § 2255 motion based on *Johnson. See, e.g.*, *In re Hires*, 825 F.3d 1297, 1302-04 (11th Cir. 2016) (concluding that a defendant could not rely on *Descamps* to prove a *Johnson* claim); *Holt v. United States*, 843 F.3d 720, 721-24 (7th Cir. 2016) (determining that a defendant's § 2255(h)(2) motion could not rest on *Johnson* because his claim ultimately turned on other post-sentencing cases, such as *Mathis*).[11]  Meanwhile, a subsequent panel of

---

[11] *See also In re Thomas*, 823 F.3d 1345, 1349 (11th Cir. 2016); *Moore*, 830 F.3d at 1273; *Kane v. United States*, No. 16-00146, 2016 WL 7404720, at *3 (W.D.N.C. Dec. 21, 2016), *aff'd*, 706 F. App'x 141 (4th Cir. 2017); *Traxler v. United States*, No. 16-747, 2016 WL 4536329, at *5 (W.D. Mich. Aug. 31, 2016), *vacated on other grounds*, 2017 WL 4124880 (6th Cir. Mar. 7, 2017); *Ziglar v. United States*, 201 F. Supp. 3d 1315, 1325-26 (M.D. Ala. 2016); *Peek v. United States*, No. 408-221, 2016 WL 4926431, at *3 (S.D. Ga. Sept. 14, 2016); *Perez v. United States*, No. 16-22379, 2016 WL 6996150, at *3 (S.D. Fla. Nov. 28, 2016), *aff'd*, 2018 WL

the Eleventh Circuit, as well as many other district courts, have concluded that courts can use case law post-dating a defendant's sentence when deciding the ACCA clauses into which that defendant's prior convictions may fall. *See, e.g.*, *In re Adams*, 825 F.3d 1283, 1285-86 (11th Cir. 2016) (concluding that a defendant could rely on *Descamps* to prove his *Johnson* claim because *Descamps* "is not an independent claim that is itself subject to the gatekeeping requirements").[12]

This issue, which is one of first impression for us, has been divisive because of an underlying difference of opinion over the effect of § 2255(h)'s gatekeeping function. As noted earlier, when a defendant brings a second or successive § 2255 motion, the district court must first consider whether the motion relies on "a new rule of constitutional law, made

---

1750555 (11th Cir. Apr. 12, 2018); *Dimott v. United States*, No. 06-26, 2016 WL 6068114, at *3 (D. Me. Oct. 14, 2016), *aff'd*, 881 F.3d 232 (1st Cir. 2018); *Burgess v. United States*, No. 493-205, 2016 WL 4618814, at *2 (S.D. Ga. Sept. 6, 2016); *King v. United States*, No. 16-22261, 202 F. Supp. 3d 1346, 1359-60 (S.D. Fla. 2016); *Leone v. United States*, No. 16-22200, 203 F. Supp. 3d 1167, 1178-79 (S.D. Fla. 2016).

[12] *See also United States v. Christian*, 668 F. App'x 820, 820-21 (9th Cir. 2016); *Rogers*, 825 F.3d at 1337-40; *In re Parker*, 827 F.3d 1286, 1287-88 (11th Cir. 2016), *vacated on other grounds*, 832 F.3d 1250 (11th Cir. 2016); *United States v. Carrion*, 236 F. Supp. 3d 1280, 1284-88 (D. Nev. 2017); *United States v. Avery*, No. 02-113, 2017 WL 29667, at *1 (D. Nev. Jan. 3, 2017); *United States v. Ladwig*, 192 F. Supp. 3d 1153, 1159-61 (E.D. Wash. 2016).

retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *accord* 28 U.S.C. § 2244(b)(2)(A). And, for such motions, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also In re Olopade*, 403 F.3d 159, 162 & n.3 (3d Cir. 2005) (extending *Tyler*'s holding with respect to § 2244(b)(2)(A) to the identical language in § 2255(h)(2)). A new rule is only made retroactive by the Supreme Court if that Court has "explicitly held, or two or more of its decisions when read together … absolutely dictate, that a particular rule is retroactively applicable to cases on collateral review." *Olopade*, 403 F.3d at 162.

The Supreme Court has never held that *Mathis*, *Descamps*, or *Johnson 2010* apply retroactively to cases on collateral review, nor do any combination of Supreme Court precedents dictate the retroactivity of those cases. *See Holt*, 843 F.3d at 722 ("*Mathis* has not been declared retroactive by the Supreme Court[.]"); *In re Jackson*, 776 F.3d 292, 295-96 (5th Cir. 2015) (indicating that the Supreme Court has not made *Johnson 2010* retroactive); *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014) (stating that "the Supreme Court has not made *Descamps* retroactive on collateral review"). Because only the Supreme Court can declare which new rules of constitutional law are retroactively applicable to cases on collateral review in the second or successive habeas motion context, *Mathis*, *Descamps*, and *Johnson 2010* cannot provide the foundation that satisfies the gatekeeping requirements for a § 2255(h)(2) motion.

But that does not end our inquiry into whether those cases may be part of a defendant's arsenal in a collateral attack on his sentence. When a defendant's second or successive § 2255 motion recites a *Johnson* claim that satisfies § 2255(h)'s gatekeeping requirements, the defendant is through the gate. *See Welch*, 136 S. Ct. at 1264-65 (concluding that *Johnson* is "a substantive decision and so has retroactive effect under *Teague* in cases on collateral review"). At that point, we are no longer concerned with AEDPA retroactivity and it makes perfect sense to allow a defendant to rely upon post-sentencing Supreme Court case law that explains the pre-sentencing law. *Cf. Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").

*Mathis*, *Descamps*, and *Johnson 2010* are such cases. An analysis of which ACCA clauses a defendant's prior convictions might fall under should be guided by precedent that will "ensure we apply the correct meaning of the ACCA's words." *Adams*, 825 F.3d at 1286. Indeed, the Supreme Court's decisions in *Mathis*, *Descamps*, and *Johnson 2010* instruct courts on what has always been the proper interpretation of the ACCA's provisions. That is because, when the Supreme Court "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers*, 511 U.S. at 313 n.12. In short, those decisions interpreting the ACCA are not new law at all, in the sense contemplated by *Teague*. The rules in *Mathis*, *Descamps*, and *Johnson 2010* are "authoritative statement[s] of what the [ACCA] meant before as well as after [those] decision[s.]" *Rivers*, 511 U.S.

33

at 312-13; *see Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) ("*Mathis* … is a case of statutory interpretation."); *Ezell v. United States*, 778 F.3d 762, 766 (9th Cir. 2015) ("*Descamps* is a statutory interpretation case[.]"); *United States v. Voisine*, 778 F.3d 176, 194 (1st Cir. 2015) (describing *Johnson 2010* as a case involving statutory interpretation). Furthermore, "a rule that requires judges to take a research trip back in time and recreate the then-existing state of the law—particularly in an area of law as muddy as this one—creates its own problems in terms of fairness and justiciability." *United States v. Carrion*, 236 F. Supp. 3d 1280, 1287 (D. Nev. 2017); *see also United States v. Ladwig*, 192 F. Supp. 3d 1153, 1160 (E.D. Wash. 2016) ("Attempting to recreate the legal landscape at the time of a defendant's conviction is difficult enough on its own.").

We thus hold that, once a defendant has satisfied § 2255(h)'s gatekeeping requirements by relying on *Johnson*, he may use post-sentencing cases such as *Mathis*, *Descamps*, and *Johnson 2010* to support his *Johnson* claim because they are Supreme Court cases that ensure we correctly apply the ACCA's provisions.[13]

---

[13] The government's argument that allowing the use of post-sentencing case law impermissibly bootstraps *Mathis*, *Descamps*, and *Johnson 2010* claims onto a *Johnson* claim ignores that there remains, throughout the entire collateral attack, a valid *Johnson* claim upon which the sentencing court is passing judgment. The post-sentencing case law is not being smuggled in under *Johnson*'s cloak because a proper analysis in light of *Johnson* warrants applying the ACCA's terms correctly. *But see Hires*, 825 F.3d at 1303 ("[A

34

Having decided all of the preliminary matters, we can now proceed to consider whether Peppers's prior convictions were properly determined to be predicate offenses under the ACCA. We begin with Peppers's prior convictions for robbery under Pennsylvania law.

### D.    *Peppers's Pennsylvania Robbery Convictions*

Peppers's prior robbery convictions[14] do not qualify as predicate offenses under the ACCA because a conviction under Pennsylvania's robbery statute does not categorically constitute a "violent felony."

Under the ACCA's elements clause, any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" qualifies as a violent felony. 18 U.S.C. § 924(e)(2)(B)(i). The parties do not dispute which two convictions are at issue here: Peppers's 1979 juvenile robbery conviction and his 1985 robbery conviction. When Peppers was convicted for those crimes, the Pennsylvania robbery statute stated:

---

defendant] cannot use *Johnson* as a portal to challenge his ACCA predicates … based on *Descamps*.").

[14] The ACCA states that the term "conviction" as used in the definition of the term "violent felony" includes "a finding that a person has committed an act of juvenile delinquency involving a violent felony." 18 U.S.C. § 924(e)(2)(C). Thus, we treat Peppers's 1979 juvenile robbery adjudication of delinquency as a "conviction" for purposes of our ACCA analysis.

35

(1) A person is guilty of robbery if, in the course of committing a theft, he:

 (i)  inflicts serious bodily injury upon another;

 (ii)  threatens another with or intentionally puts him in fear of immediate serious bodily injury;

 (iii)  commits or threatens immediately to commit any felony of the first or second degree;

 (iv)  inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

 (v)  physically takes or removes property from the person of another by force however slight.

18 Pa. Cons. Stat. § 3701(a) (June 24, 1976 to May 16, 2010). The grading provision provided that: "[r]obbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony in the third degree; otherwise, it is a felony of the first degree." *Id.* § 3701(b).

The District Court concluded that Peppers's robbery convictions qualified as violent felonies under the ACCA's elements clause rather than the unconstitutional residual

36

clause. But that conclusion cannot be supported on this record.[15]

As discussed earlier, *supra* at section II.D., when a statute is divisible because it comprises multiple, alternative versions of a crime, sentencing courts can resort to the "modified categorical approach" to determine whether a defendant's prior convictions qualify as predicate offenses under the ACCA. *Descamps*, 570 U.S. at 260-62. That approach allows a court "to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." *Id.* at 264. To make that determination, it is permissible to look to a narrow category of "extra-statutory materials" known as *Shepard* documents. *Id.* at 263; *see generally Shepard v. United States*, 544 U.S. 13 (2005). Those documents include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. After consulting *Shepard* documents and applying the modified categorical approach to determine the specific crime of conviction, the sentencing court then resorts to the traditional

---

[15] The District Court drew its conclusion from the government's earlier use of "the phrase 'has as an element the use, attempted use or threatened use of physical force against another,'" in a court filing from 2000 titled "Notice of Intention to Seek Enhanced Sentencing," to describe Peppers's prior robbery convictions. (App. at 5-6; ECF No. 46 at 2.) But what the government said in 2000 does not tell us under which ACCA clause the District Court later concluded Peppers's prior Pennsylvania robbery convictions qualify as predicate offenses.

"categorical approach" that requires comparing the criminal statute to the relevant generic offense. *Mathis*, 136 S. Ct. at 2249.

"Given the clearly laid out alternative elements of the Pennsylvania robbery statute, it is obviously divisible and, therefore, a sentencing court can properly look to the kinds of documents listed by the Supreme Court in … *Shepard* to determine which subsection was the basis of [the defendant's] prior convictions." *United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013); *see also Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then … they must be elements."); *see generally* 18 Pa. Cons. Stat. § 3701(b) (providing the punishment grading for violating various provisions of subsection (a)(1)). But, when there are no *Shepard* documents for the sentencing court to consult, the modified categorical approach becomes a useless tool. The only thing differentiating the categorical and modified categorical approaches is the consultation of *Shepard* documents to determine which of multiple alternative offenses in a single criminal statute the prisoner was convicted under. Without *Shepard* documents, the categorical and modified categorical approaches are the same, and the sentencing court is forced to proceed under the categorical approach. Here, that is exactly what is required. The parties admit that no *Shepard* documents have been produced by either Peppers or the government and, thus, we do not know under which provision of the Pennsylvania robbery statute Peppers was convicted.[16] Therefore, we must turn to the categorical approach.

---

[16] Peppers admitted through his counsel at the time of sentencing that his 1979 and 1985 robbery convictions were

38

both "armed robbery" convictions. (App. at 31, 56.) Yet, even if a defendant's admissions are encompassed within those forms of evidence contemplated by *Shepard*, the fact that Peppers's convictions were for "armed robbery" does not help us identify under which of the five subsections of Pennsylvania's robbery statute he was convicted. One would think that an "armed" robbery, which involves the use of a weapon, would typically be charged as a first-degree felony, and Peppers acknowledges that "armed" robberies are "generally charged under § 3701(a)(1)(ii)," which is a first-degree felony under Pennsylvania's robbery statute. (Opening Br. at 32); *see, e.g.*, *Commonwealth v. Ruffin*, 10 A.3d 336, 337 (Pa. Super. Ct. 2010) (noting that a defendant was charged and convicted of armed robbery under 18 Pa. Cons. Stat. § 3701(a)(1)(ii)). But Pennsylvania case law suggests that there are several instances in which defendants were convicted of armed robbery under other provisions, including the third-degree felony provision, § 3701(a)(1)(v). *See, e.g.*, *Commonwealth v. Ali*, No. 525-EDA-2014, 2015 WL 7430301, at *1 & n.1, *4-5, *7 (Pa. Super. Ct. Mar. 25, 2015) (affirming a defendant's sentence following convictions under 18 Pa. Cons. Stat. § 3701(a)(1)(ii), (iii), and (v) based on facts involving an armed robbery); *Commonwealth v. Runk*, No. 1621-MDA-2014, 2015 WL 7260326, at *1 & nn.1-2, *3 (Pa. Super. Ct. May 28, 2015) (same following convictions under § 3701(a)(1)(ii) and (v)); *Commonwealth v. Haynes*, No. 58-EDA-2013, 2014 WL 10965752, at *1, *4 & n.1, *6 (Pa. Super. Ct. Apr. 9, 2014) (denying a defendant's petition for post-conviction relief following a conviction for armed robbery under, among other things, § 3701(a)(1)(v)).

As a reminder, under the categorical approach, the "focus [is] solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. "How a given defendant actually perpetrated the crime … makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." *Id.* at 2251. We are required to "presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (alterations in original) (quoting *Johnson 2010*, 559 U.S. at 137).

The least culpable act covered by Pennsylvania's robbery statute at the time of Peppers's convictions criminalizes physically taking or removing "property from the person of another by force however slight." 18 Pa. Cons. Stat. § 3701(a)(1)(v). Pennsylvania law interprets "force however slight" to include "any amount of force applied to a person while committing a theft[,]" including the mere "use of threatening words or gestures, and operates on the mind." *Commonwealth v. Brown*, 484 A.2d 738, 741 (Pa. 1984). "The degree of actual force is immaterial, so long as it is sufficient to separate the victim from his property[.]" *Id.* Although we held in *United States v. Cornish* "that any conviction for robbery under the Pennsylvania robbery statute, regardless of the degree, has as an element the use of force against the person of another[,]" 103 F.3d 302, 309 (3d Cir. 1997), the Supreme Court's subsequent decision in *Johnson 2010* has placed significant doubt on that holding.

40

As previously noted, the Supreme Court in *Johnson 2010* held that the phrase "physical force" in the ACCA's elements clause "means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis omitted). It concluded that a prior conviction under Florida's battery law, which criminalized "*any* intentional physical contact, 'no matter how slight,'" was not a violent felony under the ACCA's elements clause because the broad range of conduct encompassed by that state law did not have "as an element the use … of physical force against the person of another." *Id.* at 135, 138, 145 (citations omitted). It reached that conclusion because "physical force" under the ACCA's elements clause is not "satisfied by the merest touching." *Id.* at 139.

Here, again, the Pennsylvania robbery statute criminalizes "physically tak[ing] or remov[ing] property from the person of another *by force however slight*[.]" 18 Pa. Cons. Stat. § 3701(a)(1)(v) (emphasis added). Because that has been interpreted to include "any amount of force applied to a person while committing a theft[,]" including the mere "use of threatening words or gestures, and operates on the mind," and because "[t]he degree of actual force is immaterial, so long as it is sufficient to separate the victim from his property," *Brown*, 484 A.2d at 741, Pennsylvania's robbery statute suffers from the same issues the Supreme Court identified with Florida's battery statute in *Johnson 2010*. Both laws proscribe the merest touching, which is insufficient conduct to meet the "physical force" requirement under the ACCA's elements clause. Thus, we think it plain that *Johnson 2010* abrogated our holding in *Cornish* with respect to third degree robbery under Pennsylvania law.

41

Consequently, Pennsylvania's robbery statute for third degree robbery does not fall within the elements clause of the ACCA because that state law provision is broader than the generic force requirements under the ACCA. Since we have no *Shepherd* documents to guide us and are thus left to apply the categorical approach in assessing Peppers's robbery convictions, we must assume he was convicted under the third degree robbery provisions and hence under a provision of Pennsylvania law that is broader than the generic requirements of the elements clause of the ACCA.[17] Furthermore, a conviction under that Pennsylvania statute does not fall within the ACCA's enumerated offenses clause because robbery is not enumerated. *See* 18 U.S.C. § 924(e)(B)(2)(ii) (enumerating only burglary, arson, extortion, and crimes involving the use of explosives). The only remaining option, then, is that Peppers was sentenced pursuant to the unconstitutional residual clause.[18]

---

[17] Importantly, our holding today does not speak to whether convictions under any single provision of the Pennsylvania robbery statute, other than 18 Pa. Cons. Stat. § 3701(v), categorically qualify as violent felonies under the ACCA.

[18] This is yet another example of a disconcerting outcome driven not by statute or a common understanding of concepts like "violent felony" but by the strictures of the categorical approach. *See, e.g.*, *United States v. Chapman*, 866 F.3d 129, 136-39 (3d Cir. 2017) (Jordan, J., concurring) (noting Judge Wilkinson's non-exhaustive list of ten cases in which the categorical approach allowed "repeat offenders [to] avoid sentencing enhancements for their violent crimes[,]" and Judge Lynch's recognition that "the categorical approach

*E.   Peppers's Pennsylvania Burglary Conviction*

It is less clear whether Peppers's prior burglary conviction qualifies as a predicate offense under the ACCA.[19] Looking first at the enumerated offenses clause, we are once again, under the categorical approach, required to determine "whether the crime of conviction is the same as, or narrower than, the relevant generic offense." *Mathis*, 136 S. Ct. at 2257. If the statute under which the defendant was previously convicted is broader than the generic crime of burglary, and if that statute is indivisible, then that prior conviction does not qualify as an ACCA predicate under the enumerated offenses clause. *Id.*

One of the ACCA's enumerated offenses is burglary, in its generic variety. 18 U.S.C. § 924(e)(2)(B)(ii); *Taylor*, 495 U.S. at 598. But the generic version of burglary has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Those elements encompass a narrower

---

forces judges into an alternative reality" (citing *United States v. Doctor*, 842 F.3d 306, 315 (4th Cir. 2016) (Wilkinson, J., concurring) and *United States v. Faust*, 853 F.3d 39, 60 (1st Cir. 2017) (Lynch, J., concurring))).

[19] Pennsylvania law at the time of Peppers's burglary conviction provided that "[a] person [was] guilty of burglary if he enter[ed] a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises [were] at the time open to the public or the actor [was] licensed or privileged to enter." 18 Pa. Cons. Stat. § 3502(a) (1973).

class of behavior than does the relevant version of the Pennsylvania burglary statute because Pennsylvania's statute includes vehicles within its definition of occupied structure, while the generic version does not. *See* 18 Pa. Cons. Stat. § 3501 (defining "occupied structure" to include "any … vehicle … adapted for overnight accommodation of persons, or for carrying on business therein"); *Taylor*, 495 U.S. at 599 (indicating that state burglary statutes criminalizing entry into "places, such as automobiles …, other than buildings," define burglary more broadly than Congress's generic definition); *see also United States v. Bennett*, 100 F.3d 1105, 1109-10 (3d Cir. 1996) (concluding that Pennsylvania's burglary statute is broader than the generic burglary offense). Under the categorical approach then, there is not an equivalence that allows us to say that burglary under Pennsylvania law categorically qualifies as an ACCA predicate offense, at least not under the enumerated offenses clause of the ACCA.[20]

---

[20] That conclusion is not altered by resort to the modified categorical approach because there can be no such resort. We have foreclosed application of the modified categorical approach when analyzing convictions under Pennsylvania's burglary statute. In our recent decision in *United States v. Steiner*, we considered the effect of the Supreme Court's decision in *Mathis* on the proper interpretation of that statute. 847 F.3d 103, 106 (3d Cir. 2017). We held "[t]he statute is not divisible and, after *Mathis*, a categorical approach, rather than a modified categorical approach, must be used." *Id.* at 119. While the *Steiner* decision dealt with the 1993 Pennsylvania burglary statute, it is identical to the statute Peppers was convicted under in 1983 in Pennsylvania state court. *Compare* 18 Pa. Cons. Stat. § 3502(a) (1973), *with id.* § 3502(a) (1991). The

To determine whether the unconstitutional residual clause of the ACCA was necessarily the basis for Peppers's burglary conviction, we must also rule out the elements clause as a basis. Peppers has the burden of proving the merits of his *Johnson* claim, *see supra* note 6, which means he bears the burden of demonstrating that his sentence implicated the residual clause of the ACCA.[21] But he has

District Court therefore erred by applying the modified categorical approach to determine whether Peppers's prior Pennsylvania burglary conviction qualified as a violent felony under the enumerated offenses clause of the ACCA. The specific facts of Peppers's case are irrelevant. Given the state of our law, Peppers's conviction under Pennsylvania's burglary statute cannot qualify as a predicate offense pursuant to the ACCA's enumerated offenses clause.

[21] To prove a *Johnson* claim, we think it incumbent on a § 2255 movant to demonstrate that his sentence necessarily implicates the residual clause, which may be shown either by evidence that the district court in fact sentenced him under the residual clause or proof that he could not have been sentenced under the elements or enumerated offenses clauses based on current case law, and that that made a difference in his sentence. Although it appears that different tests have emerged for determining whether a movant has proven a *Johnson* claim at the merits stage, *see, e.g.*, *Beeman*, 871 F.3d at 1221 ("We conclude, and hold, that, like any other § 2255 movant, a *Johnson* § 2255 claimant must prove his claim … [by showing] that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence."); *Geozos*, 870 F.3d at 895-97 (indicating that a movant proves a *Johnson* claim by showing that it is unclear

45

neither briefed nor argued on appeal that, categorically, his Pennsylvania burglary conviction does not qualify as a predicate offense under the ACCA's elements clause. That argument was thus forfeited.[22] *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) ("'[F]orfeiture is the failure to make the timely assertion of a right,' an example of which is an inadvertent failure to raise

---

whether a sentencing court relied on the residual clause and that that error was not harmless based on categorical analyses of those prior convictions under current case law); *see also United States v. Taylor*, 873 F.3d 476, 479-81 (5th Cir. 2017) (summarizing different approaches among circuit courts for deciding *Johnson* claims), the main distinguishing feature seems to be whether a movant may rely on post-sentencing case law to prove his *Johnson* claim. We have resolved here that § 2255 movants are entitled to use current case law to prove their claims. *See supra* Subsection II.C. We have also already established that there is a meaningful difference between the standard to be met at the jurisdictional gatekeeping stage of the analysis of a second-or-successive § 2255 motion and at the merits stage. *See* discussion *supra* Subsection II.A. Thus, for the merits analysis to be meaningfully different and to keep the burden of proof on the movant, where it belongs, it is appropriate to require the movant to prove by a preponderance of the evidence that his sentence depends on the ACCA's residual clause.

[22] We do not decide whether a conviction under Pennsylvania's burglary statute categorically qualifies as a violent felony under the ACCA's elements clause.

46

an argument." (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

For that reason, although Peppers's burglary conviction cannot qualify as a predicate offense under the enumerated offenses clause of the ACCA, we conclude that Peppers has not met his burden of proving that he was necessarily sentenced under the unconstitutional residual clause of the ACCA because he failed to show that the burglary conviction does not qualify under the elements clause.[23]  Peppers's burglary conviction thus stands as a qualifying predicate offense.

## III.  CONCLUSION

Because we have decided that Peppers's sentence was imposed due to constitutional error given that he may have been sentenced pursuant to the now-unconstitutional residual clause of the ACCA, the District Court must resolve whether that error was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (indicating that when a court finds that a defendant's sentence was imposed due to constitutional error, it must then determine whether that constitutional error was harmless).  The District Court noted that "the record reflects that Peppers also has a prior drug charge which qualifies as a

---

[23] Peppers also argues that the District Court erred when it relied upon his Presentence Investigation Report and the government's brief to determine he was not sentenced under the ACCA's residual clause, both of which he argues are improper *Shepard* documents.  We do not need to address those concerns, however, because our analysis does not rely on that body of disputed evidence.

47

predicate offense." (App. at 7.) The District Court should analyze in the first instance whether Peppers has at least two other qualifying predicate offenses rendering any constitutional error harmless. If the Court concludes that the error was not harmless, it must proceed to correct Peppers's sentence by removing the sentencing enhancement under the ACCA and resentencing him for the underlying crime he pled guilty to – being a felon in possession of a firearm, which carries a maximum term of imprisonment of ten years.

Accordingly, we will vacate the judgment of the District Court and remand the case for further proceedings.