WILLIAM L. MYERS, EXECUTOR OF THE LAST WILL AND TESTAMENT OF LEWIS A. MYERS, JR., DECEASED, PROSECUTOR, v. J. H. THAYER MARTIN, TAX COMMISSIONER, DEFENDANT.

Argued January 22, 1941—Decided May 15, 1941.

Before Justices Case, Donges and Heher.

For the prosecutor, *Lehlbach & Ormond.*

For the defendant, *David T. Wilentz* and *William A. Moore.*

The opinion of the court was delivered by

Donges, J. This writ of *certiorari* brings up a decree of the Prerogative Court affirming the assessment by the State Tax Commissioner of an inheritance tax upon an *inter vivos* transfer of certain bonds by decedent to his son as in contemplation of death.

The transfer of government bonds, about $53,000 in value, was made on July 31st, 1935. Decedent was 77 years old at the time and died on September 17th, 1938, at the age of 80. The causes of death stated in the death certificate were "Respiratory failure. Cardiac failure. Date of onset—9/17/38." Contributory causes were "Hypertension. Prostatic hypertrophy." The testimony shows that up until the commencement of the fatal illness decedent had been in good health except for an attack of uremic poisoning in 1934 by reason of which he was confined to bed for eight or nine days and to his home for about three weeks. Several witnesses testified that he appeared to have made a complete recovery

from this attack. His physician's affidavit is to the effect that he made complete recovery and that upon periodic examinations thereafter he was in good health.

By his will, executed in June, 1930, decedent gave his son all his stock in a corporation which they had conducted and also the residue of the estate after the expiration of life estates therein for the benefit of his wife and daughter.

Decedent and his son had been engaged together in business since 1903, with the son taking a more active and important part as the years passed. In the later years the father was still active but decreasingly so and from 1933 drew no salary from the corporation.

The contention of the prosecutor is that the gift was not made in contemplation of death but was made as compensation to the son for his failure during the number of years preceding to receive from the business the salary to which he was entitled because of the failure of the corporation to prosper. In 1929 and 1930 the salary of the son was $20,000 per year. Prior to that it had been $15,000 and his father's had been larger, although the exact amount is not stated. The son was at that time carrying the greater burden of the work and he states that at that time his father stated that the salaries were inequitable and spoke of equalizing matters. Then the business depression came and the corporation from 1932 to 1938, inclusive, sustained heavy losses. The salary of the son was reduced to $6,000 for 1931 and 1932. For 1933 his salary was fixed at $5,000 and for the subsequent years at $6,000. For the six years from 1933 to 1938, inclusive, he was entitled to a total salary of $35,000 but received only $16,000. The balance is carried upon the books of the corporation as due him, but he testified the cash position of the company has not been such as to permit payment. In this situation, the claim is that the father made the gift to the son in alleviation of the son's financial condition resulting from the failure of the business to pay his salary or make any return to him by way of dividends. Such a motive would be one connected with life rather than death, and a transfer made with the donor in that frame of mind would not be one in contemplation of death.

The Vice-Ordinary took the view that, considering the age of the donor, the size of the gift (nearly one-fifth of his total estate), the condition of his health, and the realization that death was inevitable, the natural inference was that the gift was in lieu of a testamentary disposition and hence in contemplation of death.

It is to be remembered that the gift in question was made more than two years prior to death and therefore "there rests upon the respondent here, * * * the onus of establishing by evidence that it was made 'in contemplation of death,' *i. e.*, that it was motivated by those considerations which lead to testamentary disposition of property." *Moore* v. *Martin,* 125 *N. J. L.* 189. The question is, are such inferences as may properly be drawn from the circumstances outlined sufficient to sustain the burden of proof when weighed against the testimony of the prosecutor concerning the reason for the gift? We think not. Although decedent had an acute illness the year before the gift, the testimony is that he made complete recovery and a number of witnesses testified that he appeared to be unchanged by the illness. The element of age alone is not decisive. *Moore* v. *Martin, supra.* On the other hand prosecutor offers an explanation of the gift which seems entirely credible and fits into the known facts surrounding the parties. If the decedent had wished to make a gift in contemplation of death, a more logical subject would seem to be his substantial holding of stock in the corporation which he and his son had operated. It was his intention that his son should have this stock and by his will he bequeathed it to him. But such a gift would not have produced an immediate increase of income for the son nor would it have given him something easily reduced to cash without sacrifice. The gift of the government bonds had these virtues, and the very nature of the securities which decedent selected to give his son supports, it seems to us, the idea that the intention was to recompense the son for the failure to withdraw from the business the cash salary to which he was entitled. The gift of these bonds was not in accord with the testamentary plan of the decedent as evidenced by the will, which pre-dated the gift. They were not specifically bequeathed and would have

passed with the residue into the trust funds for the benefit of decedent's wife and daughter for their lives before passing to the son.

In all these circumstances, we are of the opinion that the respondent has not sustained the burden of proof cast upon him. The decree is reversed.