**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1272
_____

UNITED STATES OF AMERICA

v.

NYLERE STANFORD,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-20-cr-00003-001)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 24, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit
Judges*

(Filed: July 28, 2023)

Eleni Kousoulis
Mary K. Healy
David Pugh
Office of Federal Public Defender
800 King Street
Suite 200
Wilmington, DE 19801

     *Counsel for Appellant*


David C. Weiss
Michael F. McTaggart
Kevin P. Pierce
Jesse S. Wenger
Office of United States Attorney
1313 North Market Street
Hercules Building
Suite 400
Wilmington, DE 19801

     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

     This appeal requires us to decide whether Delaware first- and second-degree robbery are crimes of violence under the United States Sentencing Guidelines. We hold they are. We also hold the District Court did not err when it applied the

good-faith exception to the exclusionary rule to deny a motion to suppress evidence.

I

A

On September 18, 2019, Appellant Nylere Stanford, his girlfriend, and two or three others allegedly robbed a convenience store in Winston-Salem, North Carolina. Almost three weeks later, the North Carolina authorities obtained a warrant for Stanford's arrest. The warrant alleged that Stanford helped steal $3,000 from the convenience store using a pistol and rifle. The day the warrant was issued, North Carolina police contacted Detective Justin Cannon of the Wilmington Police Department to seek help apprehending Stanford, whom they believed had fled to Delaware.

About two weeks later, Detective Cannon applied for a search warrant authorizing the use of a cell-site simulator to locate Stanford's cell phone. Cannon alleged that Stanford was "originally from the Wilmington, Delaware area" and that he had "numerous family members" and "associates" who could "assist him [] while on the run from North Carolina." App. 58. He also requested authorization to use electronic investigation techniques for three days from the date of the warrant application because, once Stanford's cell phone was located, law enforcement would need to "conduct surveillance to establish probable cause for a residence search warrant." *Id.* A judge issued the warrant the same day.

Warrant in hand, law enforcement quickly discovered that Stanford was staying at 615 S. Buttonwood Street in Wilmington (the Residence). While conducting surveillance,

3

police approached a woman who exited the Residence and asked her if Stanford was there. She said Stanford and Naki Gibson—who turned out to be Stanford's brother and was wanted on other charges—were inside.

Based on that tip, officers knocked, announced, and entered the unlocked door to the Residence. Stanford concedes that he was found "lying on a couch with a sheet and a pillow," having "slept there the night before" as an "overnight guest." App. 39, 105. Stanford and his brother were taken into custody without incident.

Detective Cannon later applied for a warrant to search the Residence for evidence of the North Carolina robbery—any firearms or clothing matching the convenience store's security camera footage, or documents suggesting a secondary residence. Cannon's affidavit (the Affidavit) alleged that Stanford was wanted in connection with the robbery, and North Carolina authorities knew Stanford had fled to Delaware and was "staying" at the Residence. App. 31. It also stated that a woman had advised law enforcement that Stanford was inside the Residence with Stanford's brother, and that Stanford had been apprehended inside the Residence that morning. Finally, and most significantly for this appeal, paragraph three of the Affidavit averred:

> During the investigation by the North Carolina authorities it was learned that Stanford and three other accomplices entered a convenience store and robbed it at gun point. Two of the subjects were armed, one with a rifle with a high capacity magazine and another with a black and silver hand gun with laser. The Sheriff's office was able to arrest three out of the four subjects and

4

> Stanford is the last outstanding subject to be apprehended. They also advised that the firearms used in the robbery are believed to still be outstanding.

*Id.* A magistrate judge issued the warrant (the Search Warrant) the same day.

Officer Robert DiRocco of the Wilmington Police Department led the search of the Residence, which yielded a loaded handgun and a cell phone. The handgun was found beneath a cushion on the couch where Stanford was laying when he was arrested.

B

A federal grand jury indicted Stanford on one count of illegal firearm possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Stanford moved to suppress the evidence found in the search of the Residence. He claimed the good-faith exception to the exclusionary rule could not save the search because the Affidavit was so void of indicia of probable cause that the officers' belief in the existence of probable cause was entirely unreasonable. Stanford also argued that the Affidavit contained recklessly false, material information. Finally, he requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to contest the Search Warrant's constitutionality.

The Government opposed Stanford's motion, and the District Court denied it. The Court bypassed whether the Affidavit established probable cause and applied the good-faith exception because the Affidavit's "alleged inaccuracies" were not material to the probable cause finding. *United States v.*

5

*Stanford*, 500 F. Supp. 3d 264, 270 (D. Del. 2020). The Court denied a *Franks* hearing for the same reason. *Id.* at 271–72.

Stanford pleaded guilty but preserved his right to appeal the order denying his motion to suppress. After the District Court accepted the plea, the United States Probation and Pretrial Services issued a Presentence Investigation Report (PSR) that calculated an advisory Guidelines range of 46 to 57 months' imprisonment. The PSR based the range in part on the judgment that Stanford committed his § 922(g) offense after being convicted of a felony crime of violence—first-degree robbery in violation of Delaware law—as defined in Guideline § 4B1.2(a). *See* U.S.S.G. § 2K2.1(a)(4)(A). The PSR also noted Stanford's Delaware convictions for second-degree robbery and attempted second-degree robbery.

Stanford objected to the PSR, arguing that because he had not been convicted of a crime of violence, his Base Offense Level was improperly set at 20 under the Guidelines. After a hearing, oral argument, and extensive briefing, the District Court overruled Stanford's objection. The Court found that "first-degree and second-degree robbery under Delaware law are crimes of violence within the meaning of the U.S. Sentencing Guidelines." *United States v. Stanford*, 2022 WL 611066, at *5 (D. Del. Feb. 1, 2022).

The Court sentenced Stanford to 46 months' imprisonment and three years' supervised release. Stanford appealed.[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

Before we consider the legal questions of first impression raised in this appeal, we turn first to Stanford's challenge to the denial of his motion to suppress. Stanford claims the District Court erred when it applied the good-faith exception to the exclusionary rule. He contends that the Affidavit was: (1) so lacking in indicia of probable cause that it was entirely unreasonable to believe probable cause existed, and (2) deliberately or recklessly false.

We review the District Court's factual findings for clear error and its legal conclusions de novo. *United States v. McCants*, 952 F.3d 416, 421 (3d Cir. 2020). "Under the good-faith exception to the exclusionary rule, if an officer relies in good faith on a warrant later found to be deficient, evidence obtained pursuant to that warrant should be suppressed only if the officer had—or may be fairly charged with—knowledge of the deficiency." *United States v. Fallon*, 61 F.4th 95, 108 (2023).

To merit a *Franks* hearing, Stanford had to make a "substantial preliminary showing" that false statements in the Affidavit were "material to the finding of probable cause" and were made "knowingly or with reckless disregard for the truth." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (cleaned up).

Stanford focuses on the third paragraph of the Affidavit (quoted above). He identifies three deficiencies. He contends that the use of the passive phrasing "it was learned" misleadingly suggests that someone *other* than North Carolina law enforcement alleged Stanford's involvement in the convenience store robbery. Next, Stanford observes that

7

paragraph three fails to mention that law enforcement misidentified the female suspect and dismissed all charges against her. Last, Stanford notes that the paragraph inaccurately claims that "three out of the four subjects" had been arrested and that Stanford was the "last outstanding" subject when only two suspects had been apprehended, one wrongfully.

The Government does not contest these inaccuracies, but argues they were not material to the probable cause finding. To determine whether they were material, we consider a corrected Affidavit, which would have read:

> During the investigation by the North Carolina authorities **the authorities came to believe** ~~it was learned~~ that Stanford and ~~three~~ other accomplices entered a convenience store and robbed it at gun point. Two of the subjects were armed, one with a rifle with a high capacity magazine and another with a black and silver hand gun with laser. The Sheriff's office was able to arrest ~~three~~ **two** ~~out~~ of the ~~four~~ subjects, **one of whom was released due to misidentification** ~~and Stanford is the last outstanding subject to be apprehended~~. They also advised that the firearms used in the robbery are believed to still be outstanding.

As the District Court noted, Stanford "offer[s] nothing more than conclusory statements on [the] materiality" of those alterations to the Affidavit. *Stanford*, 500 F. Supp. 3d at 270–71. Nor does the Affidavit so lack indicia of probable cause that Officer DiRocco was "entirely unreasonable" to think probable cause existed when he executed the Search Warrant.

*United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001) (cleaned up). The Affidavit alleged that: (1) an arrest warrant had issued for Stanford about two weeks prior; (2) Stanford had fled North Carolina to Delaware to stay with family; (3) Stanford had been tracked to the Residence, where a witness confirmed he was staying with a man known to be his brother; and (4) Stanford had been apprehended there that morning. Plus, firearms from the robbery were still missing, and firearms are "durable goods useful to their owners" well after a crime's commission. *See United States v. Ponzo*, 853 F.3d 558, 573 (1st Cir. 2017) (cleaned up). These allegations establish more than a bare link between the Residence and Stanford's "status as a suspect" in the North Carolina robbery. Reply Br. 4.

Stanford counters that law enforcement did not know how long he had been staying at the Residence, and that they believed him to be staying at many locations. That argument is unpersuasive because though Stanford *could* have been staying at multiple locations, that does not mean the police lacked probable cause to search the one place they had reason to think he *was* staying. Indeed, we have already rejected the proposition that a magistrate may not infer probable cause to search a suspect's residence just because there were *other* places the suspect might hide his contraband. *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010).

The same principle applies to reliance on a warrant. Here, the Affidavit alleged law enforcement thought the Residence contained information about Stanford's "secondary residence" where "evidence" relating to the North Carolina robbery might be found. App. 30. That belief reflected Stanford's fugitive status. Stanford suggests "[c]ommon sense" would lead a fugitive to "distance" himself from

incriminating evidence. Stanford Br. 17. That's true in some cases. But it would not be unreasonable for police to think that a fugitive (like Stanford) would keep his gun at the ready while trying to evade capture. For these reasons, the Affidavit as altered would have created at least a "fair probability" that the Residence contained evidence of Stanford's involvement in the North Carolina robbery. *Stearn*, 597 F.3d at 560 (cleaned up). And this is true even if *another* location were an "equally likely repository" of that evidence. *Id.*

Stanford further objects that Detective Cannon requested a three-day cell-site simulator search warrant because, "once the device [was] located," Cannon would need to "conduct surveillance to establish probable cause for a residence search warrant." App. 58. Stanford argues that, because Cannon did not conduct three days of surveillance on the Residence after tracing the cell signal to it, the Search Warrant could not have rested on probable cause. But new evidence of Stanford's connection to the Residence—including the tip that he was inside and the fact that he had been staying there since law enforcement located his cell phone the day before—rendered more surveillance unnecessary. Finally, Stanford asserts that the information in the Affidavit was "stale" because the North Carolina robbery occurred more than a month before the search. Stanford Br. 17. We agree with the District Court, however, that the Affidavit's statement of the date on which Stanford's arrest warrant issued "provid[ed] a reasonable basis" for inferring that the robbery was recent and that evidence of it may not have disappeared. *Stanford*, 500 F. Supp. 3d at 271. And though Stanford suggests that he would not still have his share of the stolen $3,000 a month after the robbery, the Affidavit did not allege that the robbery *proceeds* were at the Residence.

10

Nor has Stanford shown that Detective Cannon "deliberately or recklessly fals[ified]" the Affidavit. *Hodge*, 246 F.3d at 308 (cleaned up). To obtain a *Franks* hearing, Stanford needed to "present an offer of proof contradicting the [A]ffidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (cleaned up). And even substantiated assertions of mere negligent misrepresentation don't suffice. *Franks*, 438 U.S. at 171. Stanford argues that Cannon had no excuse for the errors in paragraph three given that the Affidavit "detail[ed] [Cannon's] communications with North Carolina law enforcement." Reply Br. 5. But these communications are as consistent with the proposition that North Carolina authorities erred in conveying the facts to Cannon as they are with the proposition that Cannon was reckless with the truth.

\*　　\*　　\*

The record supports the District Court's holding that law enforcement officers acted in good faith when they relied on the Search Warrant. And because Stanford did not show that the Affidavit was deliberately or recklessly false, he did not make the "substantial preliminary showing" necessary for a *Franks* hearing. *Desu*, 23 F.4th at 234 (cleaned up). The Court did not err when it denied Stanford's motion to suppress.

III

We turn now to the sentencing issues that raise questions of first impression: are Stanford's prior Delaware offenses for first- and second-degree robbery "conviction[s] of . . . crime[s] of violence" that justify his Base Offense Level of 20 under Guideline § 2K2.1(a)(4)(A)? *See Stanford*, 2022 WL

11

611066, at *4–5. We review de novo the District Court's conclusion that they are. *United States v. Scott*, 14 F.4th 190, 194 (3d Cir. 2021). In so doing we employ the "categorical approach." *McCants*, 952 F.3d at 425. That framework focuses our analysis on the statutory elements of the offense of conviction rather than the facts comprising its commission. *Scott*, 14 F.4th at 194.

Under the Sentencing Guidelines, a "crime of violence" may be determined by reference to the "elements" clause, U.S.S.G. § 4B1.2(a)(1), or the "enumerated offenses" clause, *id.* § 4B1.2(a)(2).[2] The Government claims Stanford's Delaware convictions for first- and second-degree robbery are crimes of violence under both clauses. Stanford contests both arguments. The District Court based the enhancement on an

---

[2] Under § 4B1.2 of the Guidelines,

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

analysis of only the enumerated offenses clause, *see Stanford*, 2022 WL 611066, at \*4, but, on our de novo review, we may affirm the enhancement on any ground the record supports, *United States v. Henderson*, 64 F.4th 111, 116 (3d Cir. 2023).

A

Stanford claims Delaware's first- and second-degree robbery statutes are indivisible. We disagree. A statute is "divisible" if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016). Stanford was convicted of first- and second-degree robbery in August 2008.[3] At that time, Delaware's theft statute stated: "A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it." 11 Del. C. § 841(a). Delaware's second-degree robbery statute incorporated that definition:

> (a) A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with intent to:
>
>> (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or

---

[3] We discuss only the 2008 provisions of the Delaware Code. But because none of those provisions has been materially amended, our conclusions apply equally to the same statutes today.

13

(2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

Robbery in the second degree is a class E felony.

(b) In addition to its ordinary meaning, the phrase "in the course of committing theft" includes any act which occurs in an attempt to commit theft or in immediate flight after the attempt or commission of the theft.

*Id.* § 831. And Delaware's first-degree robbery statute incorporated second-degree robbery:

(a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime:

(1) Causes physical injury to any person who is not a participant in the crime; or

(2) Displays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon; or

(3) Is armed with and uses or threatens the use of a dangerous instrument; or

14

> (4) Commits said crime against a person who is 62 years of age or older.

> Robbery in the first degree is a class B felony.

*Id.* § 832.

1

The Delaware first-degree robbery statute resembles the Pennsylvania robbery statute we construed in *United States v. Peppers*, 899 F.3d 211 (3d Cir. 2018). That statute too broke out subprovisions with the disjunctive "or." *See id.* at 231. "Given [its] clearly laid out alternative elements," we held, that statute was "obviously divisible." *Id.* at 232 (cleaned up). Delaware's first-degree robbery statute also resembles the New Jersey robbery statute we construed in *McCants* that likewise used "or." *See* 952 F.3d at 425. Here, as in those cases, the "phrasing and structure" of the first-degree statute convey its divisibility. *Id.* at 426. We hold that § 832(a) is divisible.

Stanford resists the statute's divisibility by asserting that § 832(a)'s subsections (1) through (4) are "means" of satisfying a single statutory element. Reply Br. 6. But he does not identify the element those putative means might be "illustrative examples" *of*, and we see none. *Id.* (quoting *Mathis*, 579 U.S. at 518 (cleaned up)). And though *Mathis* held that "[i]f statutory alternatives carry different punishments, then . . . they must be elements," 579 U.S. at 518, it does not follow that such alternatives *cannot* be elements if they do *not* carry different punishments. Alternatively defined offenses can trigger the same penalty. That they do so does not make their subsections means rather than elements.

The Delaware Supreme Court's decision in *Word v. State*, 801 A.2d 927 (Del. 2002), supports our reading of § 832(a). *Word* held that first-degree robbery required proof of the elements of second-degree robbery "plus one additional statutory element." *Id.* at 929–30. "For example," the court continued, "a defendant may be convicted of first degree robbery if, in the course of committing the robbery, the defendant displays what appears to be a deadly weapon." *Id.* at 930 (cleaned up). So in that case, the State "*had to prove* that [Defendant] displayed what appeared to be a deadly weapon" during the robbery. *Id.* (emphasis added). Elements are "constituent parts" of a crime that "the prosecution must prove to sustain a conviction." *Elements of Crime*, Black's Law Dictionary (11th ed. 2019). Means, on the other hand, are "legally extraneous." *Descamps v. United States*, 570 U.S. 254, 270 (2013). Section 832(a) lists alternative elements, not means. Thus, a conviction for a first-degree robbery like the one Stanford committed must be reversed when the evidence fails to establish beyond reasonable doubt the "necessary *statutory element* that the defendant 'displays what appears to be a deadly weapon.'" *Walton v. State*, 821 A.2d 871, 873 (Del. 2003) (emphasis added).

Nor is the Delaware Supreme Court's decision in *Coffield v. State*, 794 A.2d 588 (Del. 2002), to the contrary. *Coffield* held that one commits first-degree robbery by committing second-degree robbery "in combination with one or more of four additional circumstances." *Id.* at 592. Stanford thinks this line "supports the conclusion that [§ 832(a)'s] subsections are means." Reply Br. 6. Not so. Offenses "often require" for guilt—that is, have as elements—the "presence or absence of attendant *circumstances*." Wayne R. LaFave, *Substantive Criminal Law* § 1.2(c) (3d ed. 2022) (West). And

16

as for *Coffield*'s "one or more" language, a person can commit first-degree robbery by violating more than one of the divisible subprovisions: say, by committing second-degree robbery against a 62-year-old while displaying a deadly weapon. 11 Del. C. § 832(a)(2), (4). That principle is also true of the Pennsylvania robbery statute we found divisible in *Peppers*. *See* 899 F.3d at 231.

Finally, the sample jury instructions in the record strongly support our reading of the statute and caselaw. The instructions for first-degree robbery under § 832(a)(1) (physical injury) and § 832(a)(2) (display of a deadly weapon) both comprise five elements that must be proved beyond a reasonable doubt. Four of those elements are the same for both crimes. But the instructions are distinct because each requires proof of an element the other does not: (a)(1) requires a finding of proof of "physical injury," whereas (a)(2) requires a finding of proof of the display of what appears to be a "deadly weapon." *See* App. 208, 210. The instructions confirm that 11 Del. C. § 832(a) is divisible: the jury must find the relevant alternative element beyond a reasonable doubt. *See Descamps*, 570 U.S. at 272.

To sum up, the first-degree robbery statute "on its face" resolves the divisibility question, state court decisions "definitively answer[]" it too, and jury instructions confirm our conclusion. *Mathis*, 579 U.S. at 517–18. We agree with the District Court that Delaware's first-degree robbery statute is divisible. *See Stanford*, 2022 WL 611066, at *3.

2

Delaware's second-degree robbery statute is divisible for similar reasons. It too uses the disjunctive "or" to separate

17

its subprovisions. *See McCants,* 952 F.3d at 425; *Peppers*, 899 F.3d at 231. Stanford argues that the statute is indivisible "on its face" because it "does not provide different penalties for violations of the alternative clauses" and because it grades all second-degree robberies as class E felonies. Stanford Br. 23–24. But we have already rejected the view that alternatively phrased statutes list elements rather than means only when their subsections carry different punishments. *McCants*, 952 F.3d at 425. So too for grading. The grading provision of the divisible New Jersey robbery statute, for instance, stated that "[r]obbery is a crime of the second degree" (though it added a first-degree upgrade that was not triggered by circumstances detailed in any of the robbery statute's subprovisions). *See id.*

Like its first-degree counterpart, the second-degree robbery statute includes alternative subprovisions. Sections 831(a)(1) and 831(a)(2) proscribe different conduct: using force to overcome resistance, and using force to compel any person to engage in conduct that aids the commission of the theft. The Delaware Supreme Court has referred to § 831(a)(2) as an "element[]" of second-degree robbery. *Walton*, 821 A.2d at 874; *see also Johnson v. State*, 588 A.2d 1142, at *2 (Del. 1991) (table). We therefore hold that Delaware's second-degree robbery statute is divisible.

B

Because 11 Del. C. §§ 831(a) and 832(a) are divisible, we normally would apply the modified categorical approach, consulting Stanford's *Shepard* documents to discern his statutory offenses. *McCants*, 952 F.3d at 427. We need not do so here, however, because *every* Delaware first- and second-degree robbery offense is a crime of violence under the elements clause of the Guidelines.

18

The elements clause defines a "crime of violence" as an offense punishable by over a year in prison that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Section 831(a)'s plain language "closely tracks" the language of the elements clause. *United States v. Chapman*, 866 F.3d 129, 134 (3d Cir. 2017). One commits Delaware second-degree robbery "when, in the course of committing theft, the person *uses or threatens the immediate use of force upon another person*"—intentionally. 11 Del. C. § 831(a) (emphasis added). And § 832(a) incorporates second-degree robbery as an element. Because Delaware first- and second-degree robbery require proof of that "use of force" element, those statutes are "crimes of violence" under the Guidelines.

Stanford resists this conclusion. He notes that the elements clause requires "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). He observes that force can cause physical injury when it "is sufficient to overcome a victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). And he believes that Delaware second-degree robbery "does not require force overcoming a victim's resistance." Stanford Br. 24. We disagree. The second-degree robbery statute requires that force be used intentionally "upon another person" to "[p]revent or overcome resistance" (under § 831(a)(1)) or to "compel" him to aid the commission of the theft (under § 831(a)(2)). That is not de minimis force.

Stanford quotes *State v. Dawson* as evidence that the robbery victim "need not resist for an offense to constitute robbery." Reply Br. 11. It is true that *Dawson*—an unpublished lower court opinion—says that the "*degree* of resistance to the

taking is immaterial to the defendant's guilt" under 11 Del. C. § 832(a)(4). 2004 WL 838858, at *3 (Del. Super. Ct. Apr. 12, 2004) (emphasis added). But the court also said that the 77-year-old robbery victim "relinquished" her purse only because it was "forcibly taken" from her, and that she eventually "chose not to wrestle with" the purse snatcher. *Id.* at *1, *4. She was "confronted by her assailant head on" and "h[eld] her purse tightly" before surrendering it. *Id.* at *4. That situation, including the robber's use of force, squares with the elements clause, which requires only that the use of force suffice to "overpower" the will of "even a feeble or weak-willed victim." *Stokeling*, 139 S. Ct. at 553. And the force need not "cause pain or injury or even be prolonged." *Id.* (cleaned up). For those reasons, *Dawson* shows only that force sufficient to overcome resistance need not be *met with* meaningful resistance to constitute robbery, and that lesson fits with *Stokeling*.

Stanford also cites *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016). *Parnell* interpreted a Massachusetts armed robbery statute, which had been read to require only that "degree of force . . . sufficient to obtain the victim's property against his will." *Id.* at 978 (cleaned up). But *Stokeling* later held that kind of force to satisfy the elements clause. *See* 139 S. Ct. at 554. So *Parnell* is no help to Stanford either.

Finally, Stanford argues that his statutory offense criminalizes reckless conduct and that the elements clause does not encompass "offenses criminalizing reckless conduct." *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021). This contention falters as well. Stanford believes that Delaware caselaw "demonstrates" that robbery "does not require intentional force." Stanford Br. 27. But the one case he cites says only that first-degree robbery need not involve the intention *to cause physical injury*. *See Hackett v. State*, 569

20

A.2d 79, 80 (Del. 1990). Crimes of violence under the elements clause need not involve that intention either: "threatened use of physical force" suffices, and the threat could be insincere. U.S.S.G. § 4B1.2(a)(1).

Besides, the elements clause requires only that force be "consciously directed" toward a victim as the force's "object," not that the force be intended to cause the victim physical injury. *Borden*, 141 S. Ct. at 1826. Delaware first-degree robbery satisfies that condition, for it incorporates second-degree robbery as an element, and that offense requires the intentional use or threatened use of immediate force "upon another person." 11 Del. C. § 831(a). That is true of both § 831(a)(1) and § 831(a)(2) because that critical language appears in the umbrella provision of § 831(a) itself. So under either provision, the perpetrator must intentionally "employ[] physical force" against a victim, or at least threaten to. *Borden*, 141 S. Ct. at 1826. The use of reckless force would not satisfy that statutory element.

Another case Stanford cites appears at first blush to support his position but in the end is unavailing. In *Bialach v. State*, the Delaware Supreme Court considered a sufficiency-of-the-evidence challenge to a first-degree robbery offense of § 832(a)(1) based on the second-degree offense of § 831(a)(1). 744 A.2d 983, 984–85 (Del. 2000). A store manager had followed a suspicious shopper (the defendant) into the parking lot. *Id.* at 984. The manager "attempted to apprehend" the defendant. *Id.* But the defendant locked the car doors, put the car in reverse, and backed out of his parking space, striking the manager. *Id.* at 984–85. The defendant testified that he neither intended to strike the manager nor knew he had done so. *Id.* at 984. Yet the court held that the conviction would stand because a reasonable juror could conclude that the defendant used force

21

against the victim with the intent to overcome his resistance and "get away" from him. *Id.* at 986.

Though the defendant recklessly used force against the victim, *Bialach* does not help Stanford. First, the court's discussion of the defendant's mens rea as to the use of force is dicta because the sole issue raised on appeal was whether § 831(a)(1) can be satisfied when the theft victim does not know the identity of the stolen chattel. *Id.* at 984. Second, the defendant put the vehicle in reverse when the victim was "behind the vehicle" checking its license plate. *Id.* Nothing in the court's opinion forecloses the inference that the defendant intended to "force[]" the victim out of the car's path (to effect escape) via the nonverbal threat: move or be hit. *Id.* at 985. *That* intention is consistent with the lack of an intent to actually strike the victim. And, as noted above, the intentional or knowing *threatened* use of force satisfies the elements clause—even when the eventual *use* of force is only reckless.

Last, Stanford's hypothetical about a fleeing robber whose pursuing victim gets injured fails for similar reasons. To be found guilty, the fleeing robber must use *or threaten* to use force upon another person with the intent to prevent or overcome resistance or to compel the victim to surrender his property.

\*     \*     \*

To sum up, Delaware second-degree robbery—both 11 Del. C. § 831(a)(1) and § 831(a)(2)—satisfies the elements clause of Guideline § 4B1.2(a)(1) and is therefore a crime of violence. Because the state's first-degree robbery offense incorporates second-degree robbery as an element, it too satisfies the elements clause. So Stanford's first- and second-

degree offenses are crimes of violence. We will affirm on this ground the District Court's application of the sentence enhancement, and we need not decide whether Stanford's offenses are crimes of violence under the enumerated offenses clause.

IV

The District Court did not err when it denied Stanford's motion to suppress or when it applied the Guidelines enhancement for a predicate crime of violence. We will affirm the Court's judgment of conviction and sentence.